UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE WAGNER AGENCY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23 CV 1408 CDP |
| ) | |
| JOHNSON & JOHNSON, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff The Wagner Agency brings this diversity action against defendants Johnson & Johnson, Inc. (J&J) and American Modern Property and Casualty Company (American Modern) alleging that J&J wrongfully terminated an agreement under which Wagner produced insurance policies for its clients with American Modern as the insurer.  Wagner claims that J&J's termination of the agreement resulted in American Modern effectively terminating 501 insurance policies that Wagner had placed with American Modern, thereby depriving Wagner of renewal commissions.  Against J&J, Wagner brings claims of breach of contract (Count III) and tortious interference with prospective economic interest (Count IV).  Against American Modern, Wagner brings claims of breach of Missouri insurance statutes (Counts I, II, V) and tortious interference with

prospective economic interest (Count IV).[1]

American Modern now moves to dismiss Wagner's claims against it under Federal Rule of Civil Procedure 12(b)(6), arguing that they fail to state a claim upon which relief can be granted. In response, Wagner concedes that it cannot bring a private cause of action under the insurance statutes invoked in its complaint. I will therefore grant American Modern's motion to dismiss those claims. Because Wagner also fails to allege facts stating a plausible claim against American Modern of tortious interference, I will grant American Modern's motion to dismiss that claim as well. As a result, all of Wagner's claims against American Modern will be dismissed, and the only remaining claims in this action are against J&J for breach of contract and tortious interference with prospective economic interest.

## Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion, I assume that the allegations in the complaint are true, and I construe the complaint in plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). I am not bound to accept as true, however, a legal

---

[1] Wagner also originally brought an insurance-statute claim against J&J, but it voluntarily dismissed that claim in February 2024. (*See* ECF 22, 23.)

conclusion couched as a factual allegation. *Id.* at 555.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief "that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). More than labels and conclusions are required. *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition to the complaint, I may consider exhibits that are attached to the complaint, matters of public record, and materials necessarily embraced by the complaint, without having to convert the motion to one for summary judgment. *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018); *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018). Accordingly, in determining American Modern's motion to dismiss here, I consider Wagner's complaint and its exhibits.

## Background

Wagner is an insurance agency that offers a variety of different types of insurance products; it places its clients with insurance carriers for coverage on

various insurable risks. Relevant to Wagner's complaint is one insurance product in particular – specialized marine insurance for expensive, high-performance boats that have an insured value ranging from $500,000 to more than $2 million and can travel more than 100 mph. Wagner avers that given the cost of the high-performance boats and the greater risk associated with them, only a few insurance companies are willing to undertake the risk and offer insurance coverage. According to Wagner, American Modern is one of the few insurance companies to offer such coverage.

Wagner asserts in its complaint that American Modern permits only a handful of insurance agencies to apply directly to American Modern for high-risk insurance coverage on behalf of their clients. Wagner is not one of those direct-apply agencies and thus could not and cannot directly place its clients with American Modern. Wagner avers, however, that it executed an agreement in 2014 with Midlands, a general agent that had direct access to American Modern, whereby Wagner became Midlands' sub-agent regarding high-performance marine insurance. With that agreement, Wagner's clients could obtain policies from American Modern through Midlands, from which both Wagner and Midlands would then obtain commissions. J&J purchased Midlands in 2022.[2] Wagner claims that it continued to operate under the agreement and produce American

---

[2] Wagner avers the agreement was assigned to J&J as part of its purchase.

- 4 -

Modern policies for its clients until J&J terminated the agreement in August 2023.

As to the specific conduct giving rise to the complaint, Wagner alleges as follows:

> 32. On August 10, 2023, J&J abruptly terminated the contract with Plaintiff and J&J by an email sent by Lynn Mannchen, J&J's marine Manager.
>
> 33. J&J provided no other notice of termination except for the email dated August 10, 2023.
>
> 34. In addition, J&J notified AMP [American Modern] that J&J immediately terminated Plaintiff and that AMP must therefore immediately "non-renew" all of Plaintiff's 501 policies it produced and placed with AMP through J&J.  Essentially, without prior notice, nor even a simple conversation, with Plaintiff, all 501 policies place[d] by Plaintiff with AMP were effectively terminated.
>
> 35. As a result of the foregoing, AMP commenced issuing notices to Plaintiff's clients, in total, on information and belief, 501 notices of non-renewals will be sent to Plaintiff's clients in the next few weeks. Some of which have already been mailed and received by Plaintiff's clients.

(ECF 1 at ¶¶ 32-35) (citations to record omitted).  Wagner contends that its profits from commissions on the high-performance marine policies exceed $300,000 annually, and that its inability to place its clients with American Modern for such coverage has caused it to suffer more than $300,000 in damages.

With Wagner's concession that it cannot bring a private cause of action under the Missouri insurance statutes invoked in its complaint, I will grant American Modern's motion to dismiss Counts I, II, and V of the complaint, which

were brought under those statutes.  For the reasons that follow, I will also grant American Modern's motion to dismiss the claim raised in Count IV of the complaint to the extent it asserts that American Modern tortiously interfered with Wagner's prospective economic interest.[3]

## Discussion

To state a claim under Missouri law[4] for tortious interference with a business expectancy, Wagner must allege sufficient facts showing:  (1) a valid business expectancy; (2) American Modern's knowledge of the relationship; (3) American Modern's intentional interference causing a breach of the relationship; (4) absence of justification for American Modern's interference; and (5) damages resulting from American Modern's conduct.  *Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. banc 2017); *Creative Compounds, LLC v. ThermoLife Int'l, LLC*, 669 S.W.3d 330, 341 (Mo. Ct. App. 2023) (distinguishing between tortious interference with contract and tortious interference with business expectancy).

---

[3] To the extent Wagner's complaint can be read to have embedded claims of breach of good faith and fair dealing within its statutory claims against American Modern (*see* ECF 1 at ¶¶ 44, 51), Wagner did not respond to American Modern's argument that such claims should be dismissed. I consider those claims abandoned and will not address them in this Memorandum and Order. *See Little v. U.S. Dep't of Defense*, No. 4:21-CV-1309-JAR, 2022 WL 1302759, at *3 (E.D. Mo. May 2, 2022).

[4] As American Modern is an Ohio-based company, it suggests that Ohio law may apply to Wagner's claim of tortious interference even though it relies on Missouri law to argue that the claim should be dismissed.  Applying Missouri's conflict-of-law rules, I find that Missouri has the most significant relationship to Wagner's tort claim.  *See Nestlé Purina PetCare Co. v. Blue Buffalo Co.*, 129 F. Supp. 3d 787, 791 (E.D. Mo. 2015); Restatement (Second) of Conflict of Laws § 145(2) (1971).  I will therefore apply Missouri law here.

Wagner must plausibly plead all elements of the claim to survive American Modern's motion to dismiss. *See Twombly*, 550 U.S. at 562. American Modern argues that Wagner has not plausibly pled any element of its claim. Because Wagner's complaint fails to allege facts against American Modern that plausibly support the third and fourth elements, I will dismiss the claim as to American Modern.

Intentional Interference Causing Breach

To satisfy this element, Wagner must allege facts showing that American Modern actively and affirmatively took steps to induce the breach, and that Wagner's relationship with its insureds would have continued absent American Modern's interference. *Veazie-Gallant v. Brown*, 620 S.W.3d 641, 655-56 (Mo. Ct. App. 2021). Wagner alleges in its complaint, however, that it was J&J that induced the breach, not American Modern:

> 62. Just prior to August 10, 2023, J&J made a series of false statements to AMP [concerning] Plaintiff and its business. On information and belief, J&J told AMP that the insureds that Plaintiff had placed with AMP were uniquely high risk and that AMP should immediately terminate all 501 insurance policies that Plaintiff had caused to be placed with AMP.
>
> 63. J&J knew that these statements were not true and were misleading.
>
> . . .
>
> 66. J&J was intimately familiar with Plaintiff's contract and business relationship with AMP.

> 67. Without justification, J&J intentionally induced AMP to terminate the contract and business relationship Plaintiff enjoyed with AMP by disseminating to AMP, upon information and belief, false and/or misleading information to AMP concerning Plaintiff's insureds that it placed with AMP.

(ECF 1 at ¶¶ 62, 63, 66, 67.) There are no allegations that American Modern actively and affirmatively took steps to induce a breach in Wagner's business relationships.

Moreover, there are no allegations that Wagner's business expectancy would have been realized in the absence of American Modern's purported interference. According to Wagner, it had no direct relationship with American Modern and could only obtain and maintain American Modern high-performance policies for its clients through the 2014 agreement with the general agent, Midlands. Without that agreement, Wagner had no access to American Modern. It was that agreement that Wagner alleges J&J terminated. Accordingly, with that agreement having been terminated, Wagner's business expectancy to maintain its clients' policies with American Modern could not be realized, regardless of American Modern's conduct after J&J terminated the agreement.

Absence of Justification for Interference

Even if Wagner's complaint alleges sufficient facts showing that American Modern actively and affirmatively induced a breach, it nevertheless fails to allege facts showing that American Modern lacked justification in issuing non-renewal

- 8 -

notices to Wagner's clients.  Indeed, Wagner's factual allegations show that American Modern was justified in its action.

"A defendant's conduct is without justification when the defendant uses 'improper means' to further [its] interests and to the plaintiff's detriment." *SEMO Servs., Inc. v. BNSF Ry. Co.*, 660 S.W.3d 430, 439 (Mo. Ct. App. 2022) (quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 317 (Mo. banc 1993)).  "[O]nly a showing of improper means satisfies the burden of establishing a lack of justification in a tortious interference with expectancies case." *Id.* (quoting *Clinch v. Heartland Health*, 187 S.W.3d 10, 17 (Mo. Ct. App. 2006)).  "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Bishop & Assocs.*, 520 S.W.3d at 472 (quoting *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 20 (Mo. banc 2012)).  *See also Creative Compounds*, 669 S.W.3d at 341-42.

According to the complaint here, J&J told American Modern that Wagner's insureds were "uniquely high risk," that it had terminated its relationship with Wagner, and that the policies placed by Wagner with American Modern should therefore be terminated.  Nothing in the complaint demonstrates that American Modern's issuing non-renewal notices based on those representations from its direct insurance agent was improper or that it used improper means in doing so.

- 9 -

Moreover, as discussed above, Wagner's only access to American Modern was through the 2014 agreement with Midlands which, Wagner claims, J&J assumed in 2022. Consequently, if J&J was the only conduit by which Wagner's clients could access American Modern's high-performance policies, and J&J no longer had an agreement for Wagner to place such policies with American Modern, American Modern was justified in complying with J&J's instruction to not renew those policies given that American Modern did not have an independent relationship with Wagner and thus no means by which to maintain the policies with Wagner's clients.

Accordingly,

**IT IS HEREBY ORDERED** that defendant American Modern Property and Casualty Company's Motion to Dismiss [28] is **GRANTED.**

**IT IS FURTHER ORDERED** that Counts I, II, and V of the complaint, which allege violations of Missouri insurance statutes, are dismissed in their entirety with prejudice.

**IT IS FURTHER ORDERED** that Count IV of the complaint, which alleges tortious interference with business expectancy, is dismissed as to defendant American Modern Property and Casualty Company only. The claim remains as to defendant Johnson & Johnson, Inc.

**IT IS FURTHER ORDERED** that American Modern Property and

Casualty Company is dismissed from this action.

As Johnson & Johnson, Inc., has already answered the claims that remain against it (ECF 19), this case will be set for a Rule 16 Scheduling Conference by separate Order.

                                                _____
                                                CATHERINE D. PERRY
                                                UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2024.