UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE WAGNER AGENCY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 4:23 CV 1408 CDP |
| JOHNSON & JOHNSON, INC., | ) ) ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff The Wagner Agency alleges that Johnson & Johnson, Inc. (J&J) wrongfully terminated an agreement under which Wagner produced insurance policies for its clients with American Modern Property and Casualty Company (American Modern) as the insurer.[1]  Wagner claims that J&J's termination of the agreement resulted in American Modern effectively terminating 501 insurance policies that Wagner had placed with American Modern, thereby depriving Wagner of renewal commissions.  In its amended complaint, Wagner brings two claims against J&J: breach of contract (Count I); and, in the alternative, tortious interference with prospective economic interest (Count II).  ECF 75.

Two motions are fully briefed and ready for decision.  First, J&J moves to

---

[1] The Wagner Agency also named American Modern as a defendant, but I granted American Modern's motion to dismiss on May 8, 2024.  ECF 35.  The Wagner Agency eventually filed an amended complaint directed solely against J&J.  ECF 75.

dismiss Wagner's breach of contract claim (Count I) under Federal Rule of Civil Procedure 12(b)(6), arguing that it fails to state a claim upon which relief can be granted. ECF 78. In response, Wagner argues that J&J's motion requires factual determinations which preclude dismissal at this stage of the proceedings. ECF 85. Because Wagner fails to allege facts stating a plausible breach of contract claim against J&J, the motion to dismiss Count I of the amended complaint will be granted.

Second, Wagner seeks leave to amend its complaint again, claiming that it advertently omitted a prayer for punitive damages against J&J in Count II when it filed its amended complaint. ECF 92. J&J opposes amendment as untimely under the provisions of the governing case management order and unduly prejudicial. ECF 93. Because Wagner has not demonstrated good cause to amend its complaint, the motion for leave to amend will be denied. I address the motions in turn.

## Legal Standards for Rule 12(b)(6) Motions

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion, I assume that the allegations in the complaint are true, and I construe the complaint in plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). I am not bound to accept as true, however, a legal

conclusion couched as a factual allegation.  *Id.* at 555.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief "that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). More than labels and conclusions are required.  *Twombly*, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  But where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (cleaned up).

In addition to the complaint, I may consider exhibits that are attached to the complaint and materials necessarily embraced by the complaint, without having to convert the motion to one for summary judgment.  *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018); *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018).  Accordingly, in deciding J&J's motion to dismiss I consider Wagner's amended complaint and its exhibits, consisting of the alleged contract (Exhibit 1) and the email from J&J evidencing its alleged breach (Exhibit 2).

3

## Background

The relevant background facts remain unchanged from the Court's prior Memorandum and Order dismissing American Modern (ECF 35) but are restated here for ease of reference.  Wagner is an insurance agency that offers a variety of different types of insurance products; it places its clients with insurance carriers for coverage on various insurable risks.  Relevant to Wagner's amended complaint is one insurance product in particular – specialized marine insurance for expensive, high-performance boats that have an insured value ranging from $500,000 to more than $2 million and can travel more than 100 mph.  Wagner avers that given the cost of the high-performance boats and the greater risk associated with them, only a few insurance companies are willing to undertake the risk and offer insurance coverage.  According to Wagner, American Modern is one of the few insurance companies to offer such coverage.

Wagner asserts in its amended complaint that American Modern permits only a handful of insurance agencies to apply directly to American Modern for high-risk insurance coverage on behalf of their clients.  Wagner is not one of those direct-apply agencies and thus could not and cannot directly place its clients with American Modern.  Wagner avers, however, that in 2014 it executed a General Agent/Broker Agreement with Midlands, a general agent that had direct access to American Modern, whereby Wagner became Midlands' broker regarding high-

4

performance marine insurance.

The General Agent/Broker Agreement is attached to the amended complaint as Exhibit 1.  ECF 75-1.  *Id.*  Under its terms, Midlands agrees to pay Wagner "as full compensation for business placed with Midlands, commissions according to those agreed upon."  *Id.*  The General Agent/Broker Agreement authorizes Wagner "to collect, receive and receipt for premiums on insurance tendered by Wagner and accepted by Midlands."  *Id.*  The General Agent/Broker Agreement contains the following termination provision: "This Agreement may be terminated at any time by mutual consent.  It may also be terminated at any time by either party with or without cause, giving to the other thirty (30) days prior written notice sent by registered mail to the other party; however, any such notice shall not apply to risks which have been bound, canceled or are in effect at such time of termination."  *Id.*

The General Agent/Broker Agreement does not mention American Modern or any other insurance company by name, it does not refer to any particular type of insurance policy (such as high-performance marine insurance) that Wagner is authorized to place, and it contains no promises of exclusivity or guarantees of business with Midlands or any insurance company, including American Modern.  However, Wagner alleges that under the General Agent/Broker Agreement it obtained high-performance marine insurance policies for its clients from American Modern through Midlands, from which both Wagner and Midlands then received

5

commissions.

J&J purchased Midlands in 2022.[2] Wagner claims that it continued to operate under the General Agent/Broker Agreement and procure American Modern high-performance marine policies for its clients until J&J terminated the agreement in August 2023 by way of the following e-mail, which states in relevant part as follows:

> Effective Immediately, your agency's appointment with American Modern has been terminated. Primarily the reason for this decision is based on the overall loss ratio and profitability of your agency's book with American Modern. J&J can still help you with your risks with the other markets we represent and will be based on eligibility of each risk for those markets. They will non-renew your existing policies per insurance laws in the mooring state of each risk. As your risks come up for renewal, please email our team on the ones you would like us to look at placing elsewhere with current applications so we can review for eligibility with our markets. Please be advised that we will not have any markets to approach on the high-performance vessels other than Concept and Yachtinsure at this time, so those risks will be difficult for us to replace for you, but happy to send your applications to them for review as needed.

ECF 75-2 (cleaned up).

As to the specific conduct giving rise to the complaint, Wagner alleges in relevant part as follows:

> 22. On August 10, 2023, without prior notice, by email, Johnson & Johnson informed Plaintiff that is agency appointment through Johnson & Johnson with American Modern was terminated, effective immediately, because its book of business had a high loss ratio and lacked profitability. A copy of the August 10, 2023, email from Lynn

---

[2] Wagner avers the agreement was assigned to J&J as part of its purchase.

Mannchen of Johnson & Johnson to Plaintiff is attached as Exhibit 2.

23. Plaintiff's termination of its agency came as a surprise because Plaintiff had no ability to control the loss ratio and profitability of its book of business with American Modern.

25. On or about August 10, 2023, Johnson & Johnson notified American Modern that it had terminated Plaintiff's agency appointment with American Modern and directed it to non-renew and cancel all of American Modern's policies in Plaintiff's book of business.

26. As a result of the foregoing, American Modern began issuing cancellation and non-renewal notices to Plaintiff's clients.

27. The non-renewal notices that Plaintiff's clients received from American Modern indicated that the policy was being non-renewed because "the agent who provided you with your policy no longer represents our company. Please contact your agent to make other coverage arrangements."

28. Johnson & Johnson's conduct breached the Agreement because the Agreement requires notice of termination and does not apply to policies that are in force; in other words, termination applies prospectively.

36. The Midlands Agreement which was assigned to Johnson & Johnson provides in relevant part: "This Agreement may be terminated at any time by mutual consent. It may also be terminated at any time by either party with or without cause, giving to the other thirty (30) days prior written notice sent by registered mail to the other party; however, any such notice shall not apply to risks which have been bound, canceled or are in effect at such time of termination."

39. Johnson & Johnson did not provide Plaintiff with 30-days written notice of termination, as required by the Midlands Agreement. Furthermore, contrary to the Agreement, Johnson & Johnson terminated the Agreement prospectively effectively terminating all 501 policies Plaintiff had placed with American Modern.

7

> 40. Plaintiff has performed all of its obligations under the Agreement.
>
> 41. As a direct result of Johnson & Johnson's breach of the Agreement, Plaintiff has been and will continue to be damaged.

ECF 75 (cleaned up). Wagner contends that its profits from commissions on the high-performance marine policies exceed $300,000 annually, and that its inability to place its clients with American Modern for such coverage has caused it to suffer more than $300,000 in damages.

## J&J's Motion to Dismiss

In Count I of the amended complaint, Wagner alleges that the August 10, 2023, email from J&J (ECF 75-2) breaches the General Agent/Broker Agreement because it terminates the contract "effective immediately" and without providing 30-days' notice. Wagner also alleges that the e-mail breaches the General Agent/Broker Agreement because "contrary to the Agreement, Johnson & Johnson terminated the Agreement prospectively effectively terminating all 501 policies Plaintiff had placed with American Modern." ECF (ECF 75 at ¶ 39).

J&J moves to dismiss Count I on the ground that Wagner's amended complaint does not plausibly plead a breach of contract claim under Missouri law,[3] which requires the following elements: (1) the existence and terms of a contract;

---

[3]The parties agree Missouri law applies to this dispute.

(2) plaintiff performed or tendered performance under the contract; (3) breach of the contract by the defendant; and, (4) damages.  *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).  J&J contends that Wagner has not plausibly pleaded that it breached the terms of the General Agent/Broker Agreement because the e-mail does not terminate the contract, only Wagner's ability to sell American Modern policies.  Wagner argues that dismissal is inappropriate at this stage because resolution of J&J's motion will require "factual determinations of whether the August 10, 2023 email simply informed plaintiff that it no longer had an agency appointment with American Modern, whether the agreement obligated defendant to provide plaintiff with an agency appointment with American Modern, whether the agreement obligated defendant to place policies with American Modern, and/or whether defendant's immediate termination of plaintiff's agency appointment and non-renewal and cancellation of policies in plaintiff's book of business breached the agreement."  ECF 93 at 7-8.

     Wagner's arguments are insufficient to survive dismissal because these so-called "factual determinations" are actually legal conclusions that can be drawn from the plain, unambiguous language of the General Agent/Broker Agreement.  Under Missouri law, the construction and interpretation of a contract is a matter of law.  *Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.*, 13 F.4th 659, 668 (8th Cir. 2021).  An unambiguous contract which uses plain and unequivocal

9

language is enforced as written.  *Deal v. Consumer Programs, Inc.*, 470 F.3d 1225, 1230 (8th Cir. 2006).  A contract is not ambiguous merely because the parties dispute its meaning.  *Id.*

Wagner's breach of contract claim relies solely upon an alleged breach of the General Agent/Broker Agreement and alleges no other promises or contracts which govern the parties' relationship.  But the General Agent/Broker Agreement is not ambiguous and by its terms does not obligate J&J to "provide plaintiff with an agency appointment with American Modern" or require J&J to provide any American Modern policies to Wagner's clients.  The General Agent/Broker Agreement does not even mention American Modern or obligate J&J to place any policies with American Modern as a matter of law.  Therefore, no "factual determinations" are necessary to decide J&J's motion to dismiss.

The e-mail from J&J does not terminate the General Agent/Broker Agreement.  Instead, it only terminates Wagner's "appointment with American Modern," which as stated above is not a term of the General Agent/Broker Agreement.  Therefore, the notice provision for termination of the General Agent/Broker Agreement does not apply, Wagner's allegation notwithstanding.  The Court is not required to accept Wagner's allegation regarding breach as it is a legal conclusion and contradicted by the plain language of the contract which it has appended to the amended complaint.

The absence of a termination of the General Agent/Broker Agreement is further demonstrated by the remainder of the e-mail, which instructs Wagner to contact it regarding placement of its risks as they come up for renewal "so we can review for eligibility with our markets." ECF 75-2.  J&J informs Wagner that it has two other carriers for "high-performance vessels" and offers to send those "applications to them for review as needed" but acknowledges that it might "be difficult for us to replace" that market for Wagner.  *Id.*  Therefore, not only does the email not demonstrate a termination of the General Agent/Broker Agreement by J&J, it evidences an expectation by J&J that the contractual relationship will continue.  That the contractual relationship may not be as lucrative for Wagner without the opportunity to offer its clients high-performance marine insurance with American Modern does not plausibly allege a breach of the General Agent/Broker Agreement where such agreement does not require an American Modern appointment for Wagner or guarantee the availability of high-performance marine insurance policies through American Modern for any of Wagner's clients.

As for Wagner's confusing allegation that "contrary to the Agreement, Johnson & Johnson terminated the Agreement prospectively effectively terminating all 501 policies Plaintiff had placed with American Modern," it still fails to plausibly allege a breach of the General Agent/Broker Agreement given that J&J's email states that American Modern "will non-renew your existing

11

policies per insurance laws in the mooring state of each risk." ECF 75-2. There is simply nothing in the General Agent/Broker Agreement which prevents American Modern from declining to renew insurance policies that were issued to Wagner's clients or that such an action by American Modern would amount to a breach of the contract by J&J. While Wagner is clearly disappointed in the loss of future commissions from the renewal of high-performance marine policies with American Modern, there is nothing in the General Agent/Broker Agreement which prevents their non-renewal by American Modern or triggers a termination or breach of the contract by J&J upon American Modern's decision to do so.

Wagner has not stated a breach of contract claim against J&J, and Count I of the amended complaint is dismissed with prejudice.

### Wagner's Motion to Amend

Wagner seeks leave to file a second amended complaint adding a prayer for punitive damages to its claim for tortious interference with business expectancy asserted against J&J in Count II of the amended complaint. ECF 92. Wagner insists that it "inadvertently omitted" its request in the amended complaint and that J&J would not be prejudiced by amendment because "Missouri applies a bifurcated approach to claims for punitive damages" so the Court can simply order discovery surrounding J&J's financial condition at a later time. ECF 94.

12

As the amendment deadline in the governing case management order has passed, *see* ECF 70 (imposing a February 10, 2025, deadline for amendment of pleadings), Wagner must show "good cause" for amending the complaint under Federal Rule of Civil Procedure 16(b). *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) ("Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a).") (citing *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Courts should primarily consider the movant's diligence in attempting to meet the scheduling order's deadlines when considering whether the good-cause standard has been met. *Sherman*, 532 F.3d at 716-17.

Wagner asserts that it has acted diligently in seeking amendment because it filed its motion for leave less than 90 days after the amended complaint was filed on February 10, 2025. ECF 94. Yet Wagner fails to mention the following relevant facts. First, the amended complaint was filed *fifteen* months after the case was filed and the February 10, 2025, date was the *third* extension of the amendment deadline. *See* ECF 38 (original amendment deadline of August 6, 2024); ECF 57 (amended deadline extended to January 17, 2025); ECF 70 (amendment deadline extended a third time to February 10, 2025). Second,

13

Wagner brought its tortious interference claim against J&J as Count IV of the original complaint and did not seek exemplary damages on that claim at that time.[4] ECF 1 at 9-10.  Third, the case management deadlines have already been extended repeatedly, and permitting Wagner to request punitive damages at this late stage in the proceedings will undoubtedly delay the case even further, leading to additional expense and unduly prejudicing J&J by being forced at the eleventh hour to defend against a new type of damages not previously sought in the case.  *See* ECF 57 (discovery completion deadline is July 24, 2025).  And while Missouri courts may elect to bifurcate discovery on punitive damages, no such scheduling order was requested by the parties or entered here so Wagner's reliance on Mo. Rev. Stat § 510.263 is misplaced.[5]

For these reasons, while three months may sound like a reasonably diligent amount of time to seek amendment in the abstract, in reality it is decidedly less so given that Wagner is really asking for leave to seek punitive damages on a claim it

---

[4] Wagner sought exemplary damages from J&J in Count VI of the complaint, entitled Missouri Unfair Practices, but it voluntarily dismissed that claim on February 1, 2024, three months after the case was filed.  ECF 22, 23.

[5] To the extent Wagner is suggesting that it is entitled to this type of bifurcated discovery as a matter of substantive law, it is mistaken.  *Macon Elec. Coop. v. Wooldridge*, Case No. 2:18CV109 CDP, 2020 WL 11270009, at *1 (E.D. Mo. Apr. 6, 2020) (Mo. Rev. Stat § 510.263 is procedural, rather than substantive, and does not apply in a diversity case) (citing *Hanna v. Plumer*, 85 S. Ct. 1136, 1141–44 (1965) (federal courts sitting in diversity apply state substantive law and federal procedural law)).

first brought against J&J sixteen months ago.  Wagner cites no newly-discovered facts leading to its request for punitive damages at this stage of the case rather than earlier.  Under these circumstances, Wagner has failed to demonstrate good cause necessary to amend the complaint.  The motion for leave to amend is denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [78] is granted, and Count I of the amended complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to amend the complaint [92] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of June, 2025.